FILED

2003 OCT 23 P 2: 11

US DISTRICT COURT
BRIDGEPORT CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

MICHELLE MARTIN,

Plaintiff,

v.

Civ. Action No. 301CV02189(SRU)

DUPONT FLOORING SYSTEMS, INC.
and
DUPONT COMMERCIAL FLOORING
SYSTEMS, INC

August 12, 2003

Defendants.

---

## SECOND AMENDED COMPLAINT

Plaintiff, by her attorney, alleges, upon personal knowledge as to herself and upon information and belief as to others:

### NATURE OF THE ACTION

1.  This is an action brought for: [1] breach of contract; [2] promissory estoppel/reasonable reliance; [2] negligent misrepresentation; [4] breach of implied covenant of good faith and fair dealing; [5] fraud; and [6] discrimination based upon sex in violation of Title VII of the Civil Rights Act.

### THE PARTIES

2.  Plaintiff MICHELLE MARTIN is a resident of the County of Fairfield, State of Connecticut.

3.  Upon information and belief, Defendants DuPont Commercial Flooring Systems, Inc and

DuPont Flooring Systems, Inc. are or were foreign corporations duly authorized to conduct business in the State of Connecticut, with offices located at 860 Canal Street Stamford, CT and principal office in the state of Georgia.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 USC 1343(a)(4) and 28 USC 1331 and 28 USC 1332 because the issues include federal civil rights questions. Defendants are foreign corporations doing business in the State of Connecticut. Pendant jurisdiction in this matter is appropriate because all federal and state matters are related by common facts. Diversity jurisdiction is appropriate in this matter because the amount in controversy exceeds SEVENTY FIVE THOUSAND DOLLARS ($75,000).

5. Venue is proper in this district under 42 USC 2000e et al. Because the Plaintiff and/or Defendant resided in the district at the time this action was commenced and the discriminatory actions occurred primarily in this district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

6. Pursuant to a written letter of Employment (Exhibit A), Plaintiff accepted an offer from Defendant to work as an employee in the role of Sales Associate for Defendants in the role of Sales Associate for Defendant.

2

7.    Plaintiff commenced employment for Defendants on or about April 19, 1999 in Defendants' Stamford, Connecticut office.

8.    Pursuant to said employment letter, Plaintiff:

    1.    Would be compensated at an annual salary of SIXTY FIVE THOUSAND ($65,000) DOLLARS;

    2.    Would receive a bonus based upon parameters including "sales volume and profitability, penetrating target accounts, etc." ;and

    3.    Would receive other benefits of employment after NINETY (90) days of employment with Defendants.

9.    In the negotiation for this position beginning on March 8, 1999 and continuing through at least April 7, 1999, in Defendants' Stamford, Connecticut office, in the office of Mr. Jory Dennison, Mr. Dennison ("Dennison") told Plaintiff that upon the commencement of her employment, she would receive training, including but not limited to training as to the products she was to sell.

10.    In the negotiation for this position beginning on March 8, 1999 and continuing through at least April 7, 1999, in Defendants' Stamford, Connecticut office, in Dennison's office, Dennison told Plaintiff that within three months, she would receive a bonus plan, with details to be made specific following her hire.

11.    In the negotiation for this position beginning on March 8, 1999 and continuing through at least April 7, 1999, in Defendants' Stamford, Connecticut office, in Dennison's, Dennison told Plaintiff that she would receive a raise in pay to $70,000 after three months of employment.

3

12.    In or about June of 1999, when she had not received any of the promised training, nor some of the promised benefits as referred to in paragraphs 8, 9, 10, 11 and 12 Plaintiff asked to meet with her supervisor, Dennison to discuss these issues.

13.    Dennison refused to speak with Plaintiff regarding these issues. As a result of this refusal, Plaintiff met with Greg Keyes ("Keyes"), Vice President for Defendant.

14.    Keyes told Plaintiff that Dennison was lacking in managerial skills.

15.    Keyes also told Plaintiff that things would get better.

16.    Despite Dennison's lack of managerial skills, there was no change in Plaintiff's circumstances.

17.    Despite Dennison's lack of managerial skills and thus his failure to adequately perform the duties of his job with Defendant, Dennison, a male, upon information and belief was not disciplined.

18.    On or about August 24, 1999, when there was still no change in circumstances including regarding the issues in paragraphs 8-12, Plaintiff again met with Keyes, as well as Henry Grobert ("Grobert"), Manager of Defendants' New York offices.

19.    Keyes told Plaintiff words to the effect that Dennison would not be her supervisor for long and that he (Keyes) himself would take care of the problem.

20.    At that meeting, Keyes also arranged for Plaintiff to attend a training seminar in Florida on August 30, 1999.

21.    Dennison refused to allow Plaintiff to attend, despite Keyes arrangements.

22.    On or about August 31, 1999, Dennison told Plaintiff words to the effect that:

       a.      He (Dennison) would continue to be her manager;

4

b.      He was in charge;

c.      She needed to decide if she would stay or not; and

d.      She was not to go over his head in the future.

23.    On or about December 15, 1999, when Plaintiff still had not received benefits and training including as detailed in paragraphs 8 - 12, she met with Dennison and Mike Solecki ("Solecki"), Regional Vice President. Solecki told Plaintiff words to the effect that he would personally take care of the problem.

24.    On or about January 28, 2000, Plaintiff was finalizinf a contract for a project with Purdue Pharma, LP ("Purdue").   Soon thereafter Plaintiff received a proposed outline for a compensation scheme. The outline both:

1.      Disallowed bonus/commission compensation for any sales made from April 19, 1999 (5her date of hire) to at least January 1, 2000; and

2.      Took away Plaintiff's automobile and mileage allowance.

3.      Appeared to be designed to ensure that she would not make any commission/bonus on the large (over 2 million dollars) contract that she was finalizing with Purdue.

25.    On information and belief all male sales representatives in the state of Connecticut were not so treated.

26.    When she asked for a full accounting of all sales made, Defendants refused her request.

27.    On or about March 23, 2000, Solecki told Plaintiff she was to be moved to what was commonly referred to as the Wallingford, Connecticut office of Defendant, but upon information and belief is in Defendants' records as the Connecticut, North Haven, or Hartford office.  At this time she was told that her supervisor was changed from Dennison

5

to Solecki.

28.     On or about September 11, 2000, Plaintiff again asked for a report of all her sales and commissions, and an explanation as to why she had not been paid for all sales made. At this time she also requested that she be given an advance against her commissions/bonus earned.

29.     At that time Dennison presented Plaintiff with a document containing what he said were all her sales, but did not contain all sales that she had made. He inferred that she would have to sign an agreement as to her salary and bonus schedule in order to receive an advance against her commission/bonus earned.

30.     Between September and October, 2000 several meetings were held between Solecki and Plaintiff. Soleki told Plaintiff words to the effect that Dennison was to resume being her supervisor, that there were going to be some changes for the better in the future, and that she should be patient.

31.     Plaintiff initially refused, stating that she would continue to be cordial to Dennison, but that she did not feel she could work under his direction.

32.     Plaintiff ultimately stated she agreed to work for Dennison according to Defendants' own records on or about October 20, 2000.

33.     On or around this time, Plaintiff had secured an additional over $600,000 worth of contracts for Defendants.

34.     This amount included over $200,000 in additional contracts from Purdue, that Defendant had known could possibly be secured on this account, but might not be secured should Plaintiff leave Defendant.

35.     On or about October 24, 2000 Plaintiff received a call from Solecki scheduling a meeting for

6

the next day.

36.    Defendants did not give Plaintiff an advance against her commission/bonus earned, although male sales representatives in Connecticut, upon information and belief were given advances against their commission/bonus earned when they had requested them.

37.    Instead, at that meeting, on or about October 25, 2000, Plaintiff received a written warning, for among other things, that she did not give notification to management with regard to vacation time she had taken in September.(Exhibit B)

38.    Such allegation that she did not give notification to management with regard to vacation time she had taken in September was false.

39.    In fact, at the time of her vacation request, in September, Plaintiff was told in writing that she had not followed procedure and was told to follow this procedure in the future, but was still allowed to take vacation.(Exhibit C)

40.    The written warning also included a statement that she failed to follow management directive by reporting to Dennison, when according to the same document, she had already agreed to do so.

41.    Based upon the timing of the warning, and the false statements contained therein, Plaintiff told Solecki that she felt it was unwarranted and improper.

42.    Based on the false statements contained in the written warning, the fact that the issues contained therein had already been resolved, some of them over a month ago, that there was no reason for a written warning,  that Defendants had failed to abide by its agreements with her while abiding by its agreements with male sales persons, and Defendants unfair, illegal and discriminatory treatment toward her,  Plaintiff gave two weeks notice resigning her

position.

43. Plaintiff was constructively discharged by Defendant.

44. Solecki told Plaintiff words to the effect that he would go to bat for her, would see what he could do, and asked Plaintiff to return to work the next day, which she did.

45. On or about October 26, 2000, Dennison asked Plaintiff to turn in her cell phone, files, and keys. He then escorted her out of the building.

## FIRST CAUSE OF ACTION - BREACH OF CONTRACT

46. Plaintiff restates the claims made in paragraphs one through 45 of this Complaint as if restated here in full.

47. A contract of employment existed between Plaintiff and Defendant.

48. Pursuant to said contract, Plaintiff was to be paid a commission/bonus for sales accrued.

49. Pursuant to said contract Plaintiff was to be given a raise after three months on the job.

50. As of the date of her termination of employment, Plaintiff was owed in excess of Ninety Thousand ($90,000) dollars in compensation.

51. Due demand has been made for this compensation, which Defendant has refused to pay.

52. Defendant's failure to pay compensation as detailed hereinabove constitutes a breach of the contract between the parties.

53. Plaintiff has suffered damages as a direct and proximate result of Defendant's breach.

## SECOND CAUSE OF ACTION - PROMISSORY ESTOPPEL

54. Plaintiff restates the claims made in paragraphs 1 through 53 of this Complaint as if restated here in full.

8

55.     Plaintiff reasonably relied on both the written offer letter and the oral statements of Defendant as hereinabove detailed, regarding the offer of employment.

56.     Defendant made these assertions with the intent of inducing Plaintiff into accepting the offer of employment, and to continue her employment.

57.     Defendant did not comply with the terms of their offer or their assertions.

58.     As a result of these assertions, Plaintiff did not seek employment elsewhere and turned down other comparable positions of employment, or stopped negotiating same.

59.     Plaintiff has suffered damages as a direct and proximate result of this reasonable reliance.

### THIRD CAUSE OF ACTION - NEGLIGENT MISREPRESENTATION

60.     Plaintiff restates the claims made in paragraphs one through 59 of this Complaint as if restated here in full.

61.     The statements made by Defendants in the offer of employment , given at the dates, times, and place specified previously were false and Defendant failed to exercise reasonable care or competence in obtaining or communicating the information, in that Plaintiff would timely receive all compensation, benefits and training, and that the issues with Dennison as hereinabove detailed would be addressed by Defendant.

62.     The statements made by Defendants in giving a purported choice to Plaintff of whether to be a salaried sales person or a commissioned sales representative, given at the dates, times a place specified previously as well as by Defendants' agent  Solecki, specifically in Defendants' Stamford, Connecticut office on September 11, 2000 as well as in or about February 14, 2000 at Defendants' offices by letter, were false in characterizing the position of commissioned sales representative, in that if commissioned sales representatives were

9

given an "advance against commission" in Connecticut they were not required to pay back such an advance if they left the Defendants' employ prior to earning said commission.

63. The oral and other statements made by Defendant as detailed herein were false and Defendant failed to exercise reasonable care or competence in obtaining or communicating the information, in that in fact, the position of commissioned sales representative was not based on an advance against commission, but was in fact a salaried position.

64. According to documents proposing two levels of compensation for Plaintiff, which she did not see, the position of commissioned sales representative was more highly compensated than that of the salaried sales representative position which she chose.

65. Plaintiff was harmed by her reliance on the offer of employment in that she turned down other positions of employment to work for Defendant or ceased negotiating for said employment.

66. Plaintiff was harmed by her reliance on the oral and other statements made by Defendants in that she unknowingly took the lower paying position, and did not seek employment elsewhere.

67. Plaintiff was harmed by her reliance on the oral and other statements made by Defendant in that she continued to work for Defendants after her complaints were not addressed.

68. Plaintiff suffered damages including the following as a result of Defendant's negligent misrepresentation: the stress of unemployment, loss of esteem, damage to her professional career and reputation, lost wages and fringe benefits, and mental pain and suffering.

## FOURTH CAUSE OF ACTION - BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

10

69.   Plaintiff restates the claims made in paragraphs one through 68 of this Complaint as if restated here in full.

70.   Implied in the employment agreement was and is a covenant that the Defendants would act in good faith with regard to Plaintiff's employment.

71.   Implied in the employment agreement was and is a covenant that the Defendants would not make false statements with regard to her.

72.   Implied in the employment agreement was and is a covenant that the Defendants would not discharge or constructively discharge Plaintiff but for good cause.

73.   The oral and written statements made by Defendants were false and Defendants knew they were false when they were made, in that Plaintiff would timely receive all compensation, benefits and training.

74.   The oral and written statements made by Defendants were made to induce Plaintiff to accept the offer of employment and to remain with Defendants after Plaintiff had raised issues about Dennison.

75.   Plaintiff was harmed by her reliance on the oral and written statements made by Defendant in that she decided to forego her other job offers and negotiations for same.

76.   The statements made by Defendant in the written job offer of employment were false and Defendant knew they were false when they were made, in that Plaintiff would not timely receive all compensation, benefits and training and that the issues with Dennison as hereinabove detailed would not be addressed by Defendant.

77.   The statements by Solecki were false that Plaintiff did not report to him directly at any time.

78.   The statement that Defendants were equal opportunity employers were false.

79.   By its actions, Defendants breached the implied covenant of good faith and fair dealing with respect to performance and enforcement of said covenant.

80.   As a result of this breach of the implied covenant of good faith, Plaintiff has suffered damages including lost wages and benefits, has been humiliated and embarrassed, and has suffered mental anguish.

81.   Plaintiff was at all times, ready, willing and able to perform the duties and obligations of her position with Defendants, and would not have given notice of her intent to resign were it not for the illegal actions of Defendant.

82.   Plaintiff was wrongfully constructively discharged by Defendant.

83.   Plaintiff has suffered damages as a direct and proximate result of Defendant's actions, including, but not limited to: Lost wages, mental pain and suffering, damage to professional reputation and career, and stress related to unemployment.

## FIFTH CAUSE OF ACTION - FRAUD

84.   Plaintiff restates the claims made in paragraphs one through 83 of this Complaint as if restated here in full.

85.   The statements made by Defendants in the offer of employment , given at the dates, times, and place specified previously were false and Defendant knew they were false, in that Plaintiff would not timely receive all compensation, benefits and training, and that the issues with Dennison as hereinabove detailed would not be addressed by Defendant.

86.   The statements made by Defendants in giving a purported choice to Plaintiff of whether to be a salaried sales person or a commissioned sales representative, given at the dates, times a place specified previously as well as by Defendants' agent  Solecki, specifically in

12

Defendants' Stamford, Connecticut office on September 11, 2000 as well as in or about February 14, 2000 at Defendants' offices by letter, were false and Defendants knew they were false in characterizing the position of commissioned sales representative, in that she was led to believe that if commissioned sales representatives were given an "advance against commission" in Connecticut they were required to pay back such an advance if they left the Defendants' employ prior to earning said commission.

87. The oral and other statements made by Defendant as detailed herein were false and Defendant failed to exercise reasonable care or competence in obtaining or communicating the information, in that in fact, the position of commissioned sales representative was not based on an advance against commission, but was in fact a salaried position.

88. According to documents proposing two levels of compensation for Plaintiff, which she did not see, the position of commissioned sales representative was more highly compensated than that of the salaried sales representative position which she chose.

89. Plaintiff was harmed by her reliance on the offer of employment in that she turned down other positions of employment to work for Defendant or ceased negotiating for said employment.

90. Plaintiff was harmed by her reliance on the oral and other statements made by Defendants in that she unknowingly took the lower paying position, and did not seek employment elsewhere.

91. Plaintiff was harmed by her reliance on the oral and other statements made by Defendant in that she continued to work for Defendants after her complaints were not addressed.

92. Plaintiff suffered damages including the following as a result of Defendant's negligent

13

misrepresentation: the stress of unemployment, loss of esteem, damage to her professional career and reputation, lost wages and fringe benefits, and mental pain and suffering.

## SIXTH CAUSE OF ACTION - DISCRIMINATION BASED UPON SEX

93. Plaintiff restates the claims made in paragraphs one through 92 of this Complaint as if restated here in full.

94. Pursuant to Title VII of the Civil Rights Act, an employer may not discharge from employment or otherwise discriminate against an individual based upon her sex.

95. On or about April 10, 2001, Plaintiff filed a complaint of discrimination based upon sex with the U.S. Equal Employment Opportunities Commission.

96. On or about November 5, 2001 Plaintiff received a right to sue letter from the U.S. EEOC (Exhibit D).

97. In Plaintiff's prior position before her employment with Defendants, as salesperson in the same industry, the male/female ration was approximately 1:1.

98. In Plaintiff's sales position after her employment with Defendants, as salesperson in the same industry, the male/female ratio is approximately 1:1.

99. In Defendants' own documents, salespersons in the same industry have a ratio of male/female of at least 1:1.

100. The sales force of Defendants in Connecticut during the time of Plaintiff's employment was, but for her, entirely male.

101. Upon information and belief, the sales force of Defendants throughout the US was mostly male during Plaintiff's employment with Defendants.

102. Upon information and belief the sales force of Defendants in Connecticut at the time of the

14

filing of this suit was entirely male.

103.   Upon information and belief, the sales force of Defendants throughout the United States at the time of the filing of this suit was mostly male.

104.   Upon information and belief the sales management of Defendant in Connecticut during the time of Plaintiff's employment was mostly male.

105.   Upon information and belief the sales management of Defendant throughout the United States at the time of Plaintiff's employment was mostly male.

106.   Upon information and belief the sales management of Defendant in Connecticut at the time of the filing of this lawsuit was mostly male.

107.   Upon information and belief the sales management of Defendant throughout the United States at the time of the filing of this lawsuit was mostly male.

108.   Defendant's definition of equal employment opportunity is only non-discrimination.

109.   Defendant failed, during the course of Plaintiff's employment to keep track of its applicant flow via an applicant flow log in Connecticut.

110.   Defendant was required, by virtue of its government contracts, as an Equal Employment Opportunity employer, to keep an applicant flow log in Connecticut.

111.   Defendants failed to publicly advertise for sales person positions in Connecticut.

112.   Defendants failed to advise Plaintiff of the amount of (alleged) draw against commission that would be available to her if she chose to become a commissioned sales person for Defendants during her tenure, so that she did not know that the (alleged) draw would have been higher than the salaried position that she chose.

113.   Upon information and belief, male sales persons for Defendants in Connecticut did not have

15

their automobile and/or mileage allowances removed from their compensation plans during the time of Plaintiff's employment with Defendants.

114.    Upon information and belief, women who worked in Defendants' Stamford office were not routinely given Defendants' antidiscrimination policies separately upon or shortly after hire whereas men were often given such policies.

115.    Upon information and belief, Solecki informed Defendants that Plaintiff's sales activity was low.

116.    Plaintiff's sales activity had not been low.

117.    Upon information and belief, Solecki did not inform Defendants that any male salesperson's sales activity was low when they had similar or lower sales numbers for 2000.

118.    Upon information and belief, male salespersons for Defendants in Connecticut who gave two weeks' notice of their resignation were allowed to complete that period, including, but not limited to Michael D'Adamo and Daniel Accarpio.

119.    Plaintiff was never offered any positions in sales management with Defendant despite the fact that she had managerial experience and despite the fact that Dennison lacked managerial skills.

120.    Upon information and belief the percentage of women who left Defendants' employ in the state of Connecticut in the year 2000 was higher than the percentage of men who have left Defendants' employ in the state of Connecticut in the year 2000, despite the fact that Defendants employ significantly fewer women than men in the state.

121.    That the actions, including but not limited to as hereinabove detailed in this complaint constitutes disparate impact sex discrimination by Defendants against Plaintiff in violation

16

of Title VII of the Civil Rights Act.

122. That the actions, including but not limited to as hereinabove detailed in this complaint, constitute disparate treatment sex discrimination by Defendant against the Plaintiff, in violation of Title VII of the Civil Rights Act.

123. Plaintiff has suffered damages including the following as a result of Defendant's discriminatory conduct: the stress of unemployment, loss of esteem, damage to her professional career and reputation, lost wages and fringe benefits, and mental pain and suffering.

124. Plaintiff has suffered damages as a direct and proximate result of Defendants' actions.

WHEREFORE, Plaintiff demands:

1. Avoidance of the transfer of Defendants' assets to the extent necessary to satisfy the named Plaintiff's claims

2. An attachment of other provisional remedy ordered by this Court aganist assets transferred by Defendant.

3. In the first cause of action, monetary damages, costs and attorney's fees, together with such other and further relief as to this Court may deem just and proper.

4. In the second cause of action, monetary damages, costs and attorney's fees, together with such other and further relief as to this Court may deem just and proper.

5. In the third cause of action, monetary damages, costs, attorney's fees and punitive damages, together with such other and further relief as to this Court may deem just and proper.

6. In the fourth cause of action, monetary damages, costs, attorney's fees and punitive

damages, together with such other and further relief as to this Court may deem just and proper.

7.    In the fifth cause of action, monetary damages, costs, attorney's fees and punitive damages, together with such other and further relief as to this Court may deem just and proper.

8.    In the sixth cause of action, monetary damages, costs, attorney's fees and punitive damages, together with such other and further relief as to this Court may deem just and proper.

Respectfully submitted,

THE PLAINTIFF - Michelle Martin

By:    _____
ATTORNEY FERN H. PAES
Paes & Paes, LLC
4 Washington Avenue
Sandy Hook, CT 06482
203-270-6441
Fed Bar No. CT 21566
Juris No. 408892

CERTIFICATION    This is to certify that a copy of this Motion for Leave to Amend, Memorandum of Law and proposed Second Amended Complaint, along with all exhibits, was sent to the attorneys of record Marilyn Fagelson and Hugh Murray, Murtha Cullina LLP, Whitney Grove Square, Two Whitney Avenue, New Haven, CT  06510 first class mail, postage prepaid, on this date.

_____
FERN H. PAES

18

The Motion for Leave to Amend having been heard, it is hereby

GRANTED / DENIED

_____
The Court/ Hon.