FILED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

2003 DEC 15  A 10: 35

MICHELLE MARTIN,                    :
                                    :
        Plaintiff,                  :     CIVIL ACTION NO.
                                    :     301CV02189 (SRU)
v.                                  :
                                    :
DUPONT FLOORING SYSTEMS, INC.       :
and DUPONT COMMERCIAL               :
FLOORING SYSTEMS, INC.,             :
                                    :
        Defendants.                 :     DECEMBER 12, 2003


### DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN
### SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

After 21 months of contentious litigation and the completion of discovery in

this case, defendants DuPont Flooring Systems, Inc. and DuPont Commercial

Flooring Systems, Inc. (collectively "DuPont Flooring") moved for Summary

Judgment on all counts of the First Amended Complaint by motion dated August

14, 2003.

Unknown to DuPont Flooring at the time that it was preparing and filing its

summary judgment motion, Martin had moved to amend her complaint by motion

dated August 12, 2003.  By order dated October 23, 2003, the Court granted the

motion to file a Second Amended Complaint.  DuPont Flooring filed its Answer to

the Second Amended dated December 2, 2003.  Summary judgment continues to be

appropriate for all the three causes of actions -- for breach of contract, negligent

misrepresentation and fraud -- for which the Second Amended Complaint makes

substantive changes in its allegations.

1.    The $2,250 Contract Claim.

The first count in the Second Amended Complaint is for breach of contract. In the Second Amended Complaint, Ms. Martin has added a paragraph concerning an alleged promise that she would be given a raise after three months of employment. Second Amended Complaint, ¶ 49. Ms. Martin seems to be asserting in this new claim that she is entitled to the $5,000 increase in annual salary three months after her April 19, 1999 hire date. Such an increase through the balance of 1999 would amount to approximately $2,250. In prior versions of the complaint, Ms. Martin had not asserted that the statement concerning a raise after three months was contractual, but rather used it only as a basis for a claim of reliance.

In fact Ms. Martin's own testimony on the subject makes clear that the conversation she claims to have had with Jory Dennison about the timing of the raise -- a conversation which Mr. Dennison denies ever took place -- is too vague to have constituted a contract. Ms. Martin testified that shortly before she accepted a position with DuPont Flooring, she received a written salary offer from Mr. Dennison and that she called Mr. Dennison and told him that the salary offered was too low. Deposition of Michelle Martin, dated December 12, 2002 ("Martin Dep."), Defendants' Appendix in Support of the Motion for Summary Judgment ("Appendix"), Tab 1, at 63 line 13 – 64 line 21. When asked how Mr. Dennison responded, Ms. Martin testified,

> A.    He said, well, you know it would be based on my performance. And I said, "All right. Well, let's do it for three months, see what my abilities are, and after three months, raise it to 70,000, and plus the structure, the bonus structure."

Q.     So you said, "let's do three months, then raise to 70, and talk about a bonus structure"?
A.     Correct.
Q.     Okay.  And what did he say?
A.     He said, "Fine."
Q.     But the three months was a time at least as I understood what you said, where you'd be able to show them how good you were at what you did?
A.  I felt comfortable with three months so that's why we agreed to three months.  That's 90 days.

Martin Dep. 64, line 23 – 65, line 16.  A vague promise to look at Ms. Martin's

accomplishments after three months and reconsider raising her salary at that time is

not an enforceable contract to raise her salary.  See Meaney v. Connecticut Hosp.

Ass'n, 250 Conn. 500, 518-520 (1999) (concluding that "[t]he defendants'

agreement to the concept of incentive compensation is not the functional equivalent

of an agreement to pay reasonable incentive compensation in a fair amount or a

reasonable amount."); Candid Prod. v. International Skating Union, 530 F. Supp.

1330, 1338 (S.D.N.Y. 1982) (good faith negotiation clauses contained in the

contracts for negotiations for additional compensations are so vague and indefinite

that they are unenforceable.)

Even if it could be construed to be a promise conditioned on Ms. Martin's

performance, there is no evidence in this well developed record on which a jury

could reasonably conclude that Ms. Martin's performance justified such a raise.

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (explaining that in

a summary judgment motion, the court must determine if a reasonable jury could

find for the nonmoving party).  Indeed the undisputed evidence shows that the net

profit on Ms. Martin's profitable jobs completed and paid in all of 1999 was only

- 3 -

$19,976.05. Affidavit of Michelle Brewer ("Brewer Aff't"), dated August 12, 2003, ¶8, Appendix, Tab 5. This sum, earned over the approximately eight and a half months that she was employed by DuPont Flooring in 1999, was less than half of the $45,795.38 in wages (based on an annual salary of $65,000) that DuPont paid Ms. Martin during that same time period. Martin Dep. at 63; Martin Dep. Exs. 2 & 3, Appendix Tabs 3 & 4. On this record Ms. Martin can not meet her burden of proof. See Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc., 967 F.2d 742, 752 (2d Cir. 1992) (holding that the absence of a genuine issue of material fact may be shown by the absence of evidence in a well developed record) citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

2.    The Reliance Claims.

Count Three of the Second Amended Complaint asserts a claim of negligent misrepresentation and Count Five is entitled "Fifth Cause of Action – Fraud." To prevail in either a claim of negligent misrepresentation or fraud, Ms. Martin would have to prove that she relied on false statements of fact to her detriment. In both her original complaint and in the First Amended Complaint, Ms. Martin alleged that she relied to her detriment on certain false representations that were made prior to her employment with DuPont Flooring by leaving "her then current position of employment to work for the defendant" and by turning down comparable positions with other potential employers. First Amended Complaint ¶¶ 55-58. As previously argued in DuPont Flooring's Memorandum in Support of its Motion for Summary Judgment, dated August 14, 2003 ("Memorandum"), at 8-9, Ms. Martin's own

- 4 -

deposition testimony that she had been laid off from her prior position weeks before any indication that DuPont might have a position for her and turned down other positions for reasons unrelated to any offer she had from DuPont contradicts these allegations.

The Second Amended Complaint eliminates the reference to Ms. Martin having left her "then current position," presumably acknowledging Ms. Martin's deposition testimony on that subject. See Austin v. Ford Models, Inc., 149 F.3d 148, 155 (2d Cir. 1998) ("all causes of action alleged in an original complaint which are not alleged in an amended complaint are waived") quoting King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1986). However, the amendment replaces this discredited allegation with an entirely new claim.

In paragraphs 62 through 66 and 86 through 90 of the Second Amended Complaint, Martin alleges for the first time that Michael Solecki, one of the DuPont Managers above her in the chain of command, made statements in the year 2000 concerning the relative merits of being a commissioned sales representative versus a salaried sales representative and omitted the fact that DuPont Flooring in Connecticut had never sought to reclaim from a former commissioned salesperson the draw that he or she was given in excess to commissions earned at the time that that salesperson left DuPont's employ. Ms. Martin further alleges that the commission sales associate position was more highly compensated than that of the salaried sales associate position, that had Mr. Solecki been honest with her, she would have chosen to be a commissioned sales representative rather than a salaried

- 5 -

sales representative, and that this choice somehow harmed her. Although Ms.

Martin was never questioned about her reliance on DuPont's omissions because this

theory of misrepresentation was not asserted until after the close of discovery, there

is no evidence that Ms. Martin would have been better off under a commission

compensation plan.

Ms. Martin denies that she was ever given a specific offer with regard to the

draw she would be given if she became a commissioned sales person. Second

Amended Complaint ¶ 112. There is no evidence that in the record in this case that

DuPont Flooring ever formulated a specific commission compensation and therefore

there is no evidence that the draw that Ms. Martin might have been offered would

have been greater than the offered salary or that the commissions earned by the time

Ms. Martin left DuPont Flooring's employ would have been greater.

To support her allegation, Ms. Martin appears to place unjustified reliance

on an e-mail between Mr. Solecki and his supervisor, Greg Keyes in which Mr.

Solecki asks Mr. Keyes to consider various compensation proposals for Ms. Martin

(Deposition of Michael Solecki dated December 17, 2002 ("Solecki Dep."), Ex.

15), annexed at Tab A, a document which Ms. Martin admits that she was never

shown (Second Amended Complaint ¶ 64). According to Ms. Martin, neither

proposal made in the e-mail was ever offered to Ms. Martin. See Martin Dep. at

102, line 2 – 104, line 22 & Martin Dep. Ex. 4, Appendix Tab 6, (the salaried sales

person bonus structure ultimately proposed was significantly different than the

bonus structure discussed in the e-mail); Second Amended Complaint ¶ 112 (a

commission sales person proposal was never made).  Moreover, in his deposition,

Mr. Solecki testified that the purpose of the e-mail was to consult with Mr. Keyes

about possible compensation packages but he stated that the draw for a

commissioned sales person would not necessarily be greater than an alternative

salary proposal.  Solecki Dep. at 47, line 22 – 48, line 16, annexed at Tab B.  Mr.

Solecki further testified that draw during the course of employment could be

reduced to respond to performance that falls short of expectations.  Solecki Dep. at

54, line 18 – 55, line 14 and 72, lines 5-8.  On this record there is nothing but

conjecture to suggest that Ms. Martin suffered any damage as a result of her

choosing to become a salaried salesperson rather than a commissioned salesperson.

See Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986).  Absent some

evidence of her damage, Ms. Martin's claims of negligent misrepresentation and

fraud cannot survive summary judgment.

     3.     The "Fraud" Claim.

     In addition to the absence of evidence of damages, the purported "fraud"

claim is deficient on several other grounds.  In amending her Complaint, Ms.

Martin deleted most references to fraud.  Indeed, the only indication that Ms.

Martin intends to allege fraud is in the title of the fifth cause of action, which reads

"Fifth Cause of Action – Fraud."  Otherwise, paragraphs eighty four through ninety

two of the Second Amended Complaint substantially reiterate, verbatim in many

instances, the claims made under the negligent misrepresentation cause of action.

In fact, the final paragraph of the "fraud" allegation states "as a result of

Defendant's negligent misrepresentation ...." and never once used the term "fraud" other than in the title.

Even if a fraud claim could be gleaned from the restated negligent misrepresentation cause of action, Ms. Martin failed to properly aver it under Fed. R. 9 (b). Federal Rule 9 (b) requires that all claims of "conditions of the mind" (fraud or mistake) be stated with particularity. "[W]hen a complaint charges fraud, it must (1) detail the statements . . . that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements . . . were made and (4) explain why the statements . . . are fraudulent." Olsen v. Pratt & Whitney Aircraft, 136 F.3d 273, 275 (2d Cir. 1998) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 347 (2d Cir. 1996)). While Ms. Martin alleged that DuPont Flooring provided false information by omission, she never once explained how or why any of the statements qualified as fraudulent. As a result, she failed to state fraud with the requisite particularity under the Federal Rules.

Even if the purported false statements were stated with sufficient particularity, Ms. Martin failed to allege all of the elements of fraud claim. There are four essential elements to a common law fraud claim in Connecticut: (1) a false representation made as a statement of fact; (2) the statement was untrue and the party making the statement knew of its falsity; (3) the statement was made with the intent to induce the other party to act; and (4) the other party acted in reliance on the false representation and was damaged. Tilley v. Anixter Inc., NO. 3-02-CV-1312 (JCH), 2003 U.S. Dist. LEXIS 16685, *8 (D. Conn. 2003) (quoting Suffield

Dev. Assoc. Ltd. P'ship v. National Loan Investors, L.P., 260 Conn. 766, 777 (2002)).

With regard to the new allegations that DuPont Flooring discussed the availability of commission based compensation without revealing that DuPont Flooring had never attempted to recoup unearned draw from former commissioned sales people who left their employment in Connecticut, Ms. Martin never asserted that DuPont Flooring knew of the falsity of the statements nor did she assert that the DuPont Flooring made the statements to induce her to accept the position. In fact, Ms. Martin only alleges that "Defendant failed to exercise reasonable care or competence in obtaining or communicating the information," conduct which never rises to the level of fraud. In the face of these many failings, the "fraud" claim cannot survive.

### Conclusion

For the reasons set forth above and in the defendants' initial Memorandum in Support of its Motion for Summary Judgment and in its Reply Memorandum of Law, summary judgment is appropriate on all of Plaintiff's claims.

DEFENDANT - DUPONT FLOORING
SYSTEMS, INC.

By: _Marily B Fagelse_____
　　Hugh F. Murray, III - ct11418
　　Marilyn B. Fagelson - ct17202

Murtha Cullina LLP
Whitney Grove Square
Two Whitney Avenue
P.O. Box 704
New Haven, Connecticut 06503-0704
Telephone:  (203) 772-7700
Fax:  (203) 772-7723
E-mail:  hmurray@murthalaw.com
　　　　mfagelson@murthalaw.com
Their Attorneys

**CONFIDENTIAL**



**Mike S Solecki**
01/20/2000 05:15 PM

To: Greg Keyes/DCFS@DCFS
cc:
Subject: PERFORMANCE BASED COMP PLANS MICHELLE MARTIN,JORY DENNISON

As we discussed I need to true up and revise Michelle and Jory on compensation packages for 2000.

Please review the following and let me know what you think. I would like to resolve this matter as quickly as possible.

MICHELLE MARTIN;

Michelle as a current base salary of $ 65,000 per year and is submitting weekly for mileage.

OPTION I:
Recommended compensation package:
Base salary $ 70,000.00 ( inclusive of car allowance)
Bonus program: 1 to 1 based on GP generated. Threshold to achieve bonus would be $ 475,000. based on a forecast of over all sales of 2.5 m @ a 19% Gross profit.

Example bonus: 575,000 gp generated. Bonus amount would be 100,000. example GP % 20. Bonus amount 100,000 @ 20 % = $ 20,000 bonus for year.

OPTION II:

Draw and commission based package.
draw 80,000 ( includes car allowance)  with 1.5% comm enhancer.

Greg not knowing the new packages that are being worked on for the entire company if I'm close on either please let me know.
Because Jory never trued Michelle up on a real program I would like to resolve this ASAP.

Thank you.

Ideas for Jory will follow.

JORY DENNISON:

PLAINTIFF'S
EXHIBIT NO. 13
FOR IDENTIFICATION
DATE: 12.17.07  RPTR: M

47

1                MICHAEL SOLECKI  -  CONFIDENTIAL

2        in salary, yes.

3            Q.    Now, did you ever offer her a commission sales

4        position, commission sales associate?

5            A.    Yes.

6            Q.    What were the details of that?

7            A.    Same as everybody else in the company.

8            Q.    What was that?

9            A.    The commission sales associate program in

10       writing.

11           Q.    What was the compensation offer?

12           A.    What was the compensation offer?  I don't know

13       if there was a compensation offer.  I think the plan was

14       laid out, both plans were laid out.

15           Q.    And, in general, is the draw with commission

16       higher than that --

17                    MR. MURRAY:  Object to the form.

18           A.    Higher than --

19                    MS. PAES:  Will you let me finish?

20                    MR. MURRAY:  I thought you were done.

21       I apologize.

22           Q.    Is the draw, the value of the draw higher than

23       that of the salary in dollar value?  I'm not talking

24       about the overall package.  Just what would be

25       considered salary and draw.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendants' Supplemental Memorandum in Support of Their Motion for Summary Judgment was sent via UPS overnight mail for Monday delivery, on December 12, 2003 to Fern H. Paes, Esq. and Michael T. Paes, Esq., Paes & Paes, LLC, 4 Washington Avenue, Sandy Hook, CT 06482.

Marilyn B. Fagelson - ct17202